JESSIE M. ST. GEMME, Plaintiff-Appellant, *v.* ROGER L. TOMLIN, Defendant-Appellee.

Fourth District   No. 4—83—0218

Opinion filed October 27, 1983.—Rehearing denied November 14, 1983.

Robert D. Owen and Leslie L. Veon, both of Owen, Roberts, Susler & Murphy, P.C., of Decatur, for appellant.

Richard F. Record, Jr., and Paul R. Lynch, both of Craig & Craig, of Mattoon, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Plaintiff brought suit against the defendant in the circuit court of Coles County alleging dental malpractice. A jury returned a verdict in favor of the defendant, plaintiff's post-trial motion was denied, and this appeal followed.

Four issues are raised: (1) manifest weight of the evidence; (2) error by the trial court in refusing admission of deposition testimony of plaintiff's expert; (3) error in the instructions; and (4) error in defendant's closing argument.

The basic facts are not controverted. Defendant practices general dentistry in Mattoon and was consulted by plaintiff for a general examination after her former dentist had died. She had not seen a dentist for several years prior to this first consultation. Defendant advised plaintiff that the third mandibular molar should be extracted. The tooth was tissue-impacted and extensively decayed. A preoperative X ray indicated that the apex of the root tip was close to, and possibly protruding into, the mandibular canal which contains the mandibular nerve. It also indicated that the tooth was probably ankylosed, that is, fused to the jaw bone, in certain areas. Left untreated in its condition, the tooth would have become infected and would pose a life-threatening situation. The only remedy was extraction, a difficult and complicated procedure.

One consequence of the operation is paresthesia, a change or loss of sensation in the lip. It occurs to some degree in 1% to 5% of the cases of extraction of all third molars and as high as 10 or 15% of the cases involving a tooth in the condition found here.

Defendant did not warn plaintiff of the potential paresthesia. It did ensue after the extraction, which occurred on April 25, 1978. Defendant left a portion of the root tip in place believing that it would be likely to cause less damage than that which might be caused by attempting to remove it. In September 1978 plaintiff consulted oral surgeons at the Christie Clinic in Champaign concerning her paresthesia. They reopened the surgical site and removed a calcified body which was probably the remnant of the root left by the defendant. The second procedure did not relieve the paresthesia, which is probably permanent.

Plaintiff filed a two-count complaint; count I alleged conventional malpractice under a theory of *res ipsa loquitur*; count II alleged failure to obtain an informed consent. At the conclusion of all the evidence plaintiff confessed a motion for directed verdict on count I and the case was submitted to the jury on count II.

■ The weight of the evidence issue resolves itself, as it nearly always does in these cases, into a duel of the experts with the jury electing to award the trophy to one of them. Plaintiff's expert was Dr. Richard Bianco, one of the treating oral surgeons from Christie Clinic. On the failure to warn question, he testified that the standard of care for a dentist about to perform the type of surgery here involved would require disclosure of the risk of post-operative paresthesia. Defendant's expert was Dr. Zellers, a practicing dentist in Mattoon. It was established that he was a friend of the defendant and associated with him in a business venture. He stated that the prevailing practice in Mattoon in 1978 was not to warn of the possibility of paresthesia, although since then the practice had been changed, largely because of the instant suit and others like it. He was cross-examined from treatises which stated that where a molar is in close proximity to the mandibular nerve, the patient should be warned of paresthesia. He responded that other treatises have taken the opposite view. Thus was framed a question which a jury is mandated to answer: which one is to be credited with the weightier opinion. The answer here was in favor of the defendant. " '*** A verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident. ***' " (*Cochran v. Parker* (1968), 91 Ill. App. 2d 56, 60, 233 N.E.2d 443,

445.) We cannot say here that the opposite conclusion is clearly evident.

The question of proximate cause may be more easily answered. In all but the most gross malpractice cases there must be expert evidence not only as to the negligence of the defendant but also as to a proximate causal connection between the negligence and the injury suffered by the plaintiff. (*Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 379 N.E.2d 306.) This principle is applicable to failure-to-warn cases. (*Green v. Hussey* (1970), 127 Ill. App. 2d 174, 262 N.E.2d 156.) In the instant case the only evidence on this matter favorable to the plaintiff came from the plaintiff herself who testified that if she had known of the risk, she would not have submitted to the procedure. All of the expert evidence, both plaintiff's expert and defendant's experts, was to the contrary.

All of the experts testified that there was no reasonable alternative. Dr. Cooper, called as a defendant's witness and who, with Dr. Bianco had treated plaintiff at Christie Clinic, testified that no reasonable person would refuse the treatment given. All agreed that within a short time the tooth would become abscessed and hence life-threatening.

We agree with the statement made by the Supreme Court of California:

> "The patient-plaintiff may testify on this subject but the issue extends beyond his credibility. Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that had he been informed of the dangers he would have declined treatment. Subjectively he may believe so, with the 20/20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment. Thus an objective test if preferable: *i.e.*, what would a prudent person in the patient's position have decided if adequately informed of all significant perils." *Cobbs v. Grant* (1972), 8 Cal. 3d 229, 245, 502 P.2d 1, 11-12, 104 Cal. Rptr. 505, 515.

The plaintiff failed to meet her burden of proof on the question of proximate cause.

Plaintiff's next issue concerns the exclusion of certain testimony given by deposition by Dr. Bianco. Plaintiff's counsel was developing the standard of care in the context of failure to warn and an objection was lodged by defense counsel based, *inter alia*, on the locality rule. Plaintiff's counsel then reframed his question, indicating that the locality should be assumed to be the States of Illinois and Indiana. The

trial court excluded this portion of the deposition on the ground that the locality here was the Mattoon area. Plaintiff argues in this court that the locality rule, as followed by the trial court and as it exists in this State now, has become parochial in view of the development of medicine and surgery into international disciplines. There is authority for that proposition. (Compare *Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 399 N.E.2d 238.) However much or little we may agree philosophically, we need not pursue the doctrine in this case.

Dr. Bianco's further testimony, which was heard by the jury, was forceful and pointed. He stated that there should be a warning concerning possible post-operative paresthesia and this testimony was directed at the specific surgery here involved. The excluded testimony dealt with the extraction of third molars in general, and at best was cumulative. Error in the admission or exclusion of evidence is harmless if the facts involved are strongly established by other competent evidence. *People v. Duckworth* (1981), 98 Ill. App. 3d 1034, 424 N.E.2d 1337.

Plaintiff next complains about the use of Illinois Pattern Jury Instructions (IPI), Civil, Nos. 105.01, 105.05 (2d ed. 1971). Both were given by the trial court over objection by the plaintiff.

As to IPI Civil 105.01, plaintiff's objection is to the use of the opening phrase, "In operating upon a patient ***." She maintains that since the only issue which ultimately went to the jury was that of informed consent, this phrase should not have been used since it applies only to general negligence or *res ipsa loquitur*. We disagree.

The phrase may be read broadly enough to include both preoperative and post-operative procedures and should be so used. The balance of the instruction refers to "skill and care" on the part of the doctor which would necessarily include preoperative and post-operative procedures. Plaintiff's attempt to place such a narrow focus on the language is ill-advised and carried to its logical extreme would require a plethora of instructions to the jury covering each and every step and phase of treatment individually.

In addition, as has been indicated, the trial proceeded on both *res ipsa loquitur* and informed consent. It was not until all the evidence had been heard that the *res ipsa* was taken out. The jury had heard a great deal of evidence concerning the operation and the skill and care of the dentist. Plaintiff's counsel also questioned that skill in closing argument. In view of that record, the jury could have been left to wonder what had happened. Even though the instruction was less than helpful, we fail to see how plaintiff has been prejudiced by it.

Plaintiff next complains about IPI Civil No. 105.05, which the trial court gave in a slightly modified form as follows: "A surgeon must obtain the consent of a patient before operating on her." Plaintiff submitted, and was refused, the following: "A dentist must obtain the informed consent of a patient before operating on him." In our opinion each of these is subject to the same quantum of vagueness and abstraction.

■ Plaintiff argues that there are four elements in an informed consent action which should be proved. Without passing on the validity of these elements, we observe that if plaintiff were so convinced at the time of trial, she should have submitted an instruction delineating that theory. If she did not, she cannot now be heard to complain that such an instruction was not given. *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.

In our opinion the jury would not have been any more enlightened with plaintiff's tendered instruction than with defendant's given instruction.

■ ■ Plaintiff's final complaints relate to the defendant's closing argument. Defense counsel argued to the jury that if the tooth had not been removed, it would have become infected and would then pose a life-threatening situation. Plaintiff's counsel objected and was overruled and now argues that there was no evidence of infection; hence, it is claimed, the argument is not based on the evidence. While it is true that there was no evidence of infection at the time of surgery, all three experts were in agreement that it would shortly have ensued if the surgery had not been performed. Defense counsel's argument was a fair inference from the evidence. *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770.

Plaintiff also complains that in a portion of defense counsel's argument he misstated the law by suggesting that the defendant would have been negligent if, because of his warning, plaintiff would have elected not to have the surgery. We disagree.

A definitive statement as to how much a doctor should disclose to his patient is found in *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 768, 347 N.E.2d 320:

> "A doctor has a special relationship with his patient. [Citation.] This relationship not only vests the doctor with the responsibility of disclosure, but also requires the doctor to exercise discretion in prudently disclosing information in accordance with his patient's best interests. To disclose more than that which is material would run counter to the responsibility assumed through the doctor-patient relationship."

Defense counsel's argument found its predicate in this principle. We also note in passing that the argument was not objected to at the time. See *Grabner v. American Airlines, Inc.* (1980), 81 Ill. App. 3d 894, 401 N.E.2d 1196.

The judgment of the circuit court of Coles County is therefore affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.