JACQUELINE RAE MARSHALL, Plaintiff-Appellee, v. UNIVERSITY OF CHICAGO HOSPITALS AND CLINICS *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 86—2789

Opinion filed December 29, 1987.

William C. Anderson III, Hugh C. Griffin, and Diane I. Jennings, all of Lord, Bissell & Brook, of Chicago, for appellants.

Lidov & Block, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff brought a medical malpractice action against the defendant hospitals because she got pregnant with her fifth child approximately 11 months after elective surgical sterilization by tubal ligation. Plaintiff's original complaint alleged that because of the negligent tubal ligation, she became pregnant. When the negligent count was dropped, plaintiff filed an amended complaint alleging that the defendants failed to inform her that there was a 1% chance of failure of tubal ligation to prevent future pregnancies. She further alleged that had she known the failure rate of 1%, she would not have undergone that procedure. This is the sole basis for the alleged malpractice.

The jury returned a verdict of $20,000 for the plaintiff. The trial court denied defendants' post-trial motion for judgment *n.o.v.* or for a new trial. Defendants appeal.

In May 1976, while pregnant with her fourth child, plaintiff was receiving prenatal care at the defendant hospitals. She was a borderline diabetic, was financially strapped, experiencing marital difficulties, and consequently did not want to have any more children. On May 13, 1976, she discussed the relative merits of various forms of birth control with a resident physician at the defendant hospitals. Plaintiff informed the resident physician that she was not interested in birth control pills because she used them before and they made her

sick. She also told him that she became pregnant while using a contraceptive cream.

The resident physician testified that he explained the merits of the various options and gave the plaintiff a brochure entitled "Voluntary Sterilization for Women" to read and discuss with her husband. The three-page brochure consisted of information taken from the Planned Parenthood Association. It stated that tubal ligation is a "virtually certain" form of birth control and should be regarded as permanent because it was rarely possible to repair tubes surgically if a woman wanted to have more children. Plaintiff testified that she understood "virtually certain" to mean she would never get pregnant again.

On May 13, 1976, plaintiff also signed a "Consent for Non-Therapeutic Sterilization" which consisted of one page with information on the front and back. The first page states in part:

"The risk of failure must be recognized but the percentage of pregnancy subsequent to sterilization is small."

Plaintiff's signature appeared on the other side of the document. She testified that she never saw the side with the risk of failure information. The resident physician testified that the risk of failure was explained to the plaintiff and that she was given an opportunity to ask questions.

On May 29, 1976, at about 3:30 a.m., plaintiff was admitted to the defendant hospitals to deliver her fourth child and gave birth approximately an hour later. The surgeon testified that he, saw the plaintiff after the delivery, explained the tubal ligation procedure and failure rate, and obtained another written consent form. The explanation took 10 to 15 minutes and plaintiff was given an opportunity to ask questions. She was not mentally impaired in any way. Plaintiff testified that she never read the consent form.

The tubal ligation was performed at about 8 a.m. on May 29, 1976, about 3½ hours after delivery and about 1½ hours after signing the consent form.

Approximately 11 to 12 months after the tubal ligation, plaintiff got pregnant with her fifth child. She delivered that child on January 17, 1978, at Michael Reese Hospital. Immediately after the birth of that child, she had another tubal ligation performed at Michael Reese.

Plaintiff testified that had she known there was a failure rate of 1%, she would not have undergone the tubal ligation the first time, but would have instead gone back on birth control pills even though they made her sick.

Plaintiff's complaint against the defendants was filed on May 26,

1978, just prior to the expiration of the two-year statute of limitation and approximately four months after she had undergone a second tubal ligation at another hospital. The principal issue on appeal is whether the trial court erred in denying defendant's motion for judgment *n.o.v.* or, in the alternative, for a new trial.

## I

Initially, defendants contend that plaintiff failed to present any expert testimony or other evidence that the standard of care required disclosure of a 1% risk of failure.

Plaintiff did not present her own expert. Instead, plaintiff subpoenaed defendants' expert and called the surgeon as an adverse witness. Both testified in plaintiff's case in chief.

■ The well-established *Pedrick* standard applies. A verdict should be directed or judgment *n.o.v.* granted when all of the evidence viewed in its aspect most favorable to the plaintiff so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■ Plaintiff's trial counsel posed the following question, and the following answer was given:

"Q. But, Doctor, based upon a reasonable degree of medical certainty, would you consider it a deviation from the standard of care that was present in Cook County, Illinois in 1976 to merely give a patient a consent form to sign for a tubal ligation without explaining anything to her about its context?

A. Yes."

There was conflicting evidence regarding the information given to the plaintiff and the explanations made to her prior to surgery. Applying the *Pedrick* standard, the trial court properly refused to direct a verdict for the defendants and properly denied defendants' motion for judgment *n.o.v.* based on the issue of the standard of care.

## II

■ However, plaintiff is also required to prove that the failure to meet the standard of care was the proximate cause of her injury. That burden of proof is equally applicable to allegations of a lack of informed consent as to negligent performance of a medical procedure. *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 184-85, 262 N.E.2d 156.

It was not enough for plaintiff to subjectively assert at trial that, had she known that tubal ligation was only 99% effective, she would have chosen instead the 90% effective birth control pills that made

her sick. Rather, as stated in *St. Gemme v. Tomlin* (1983), 118 Ill. App. 3d 766, 769, 455 N.E.2d 294, *appeal denied* (1984), 96 Ill. 2d 571, it was incumbent upon plaintiff to prove by "objective" evidence that a reasonable person, in possession of the allegedly omitted information, would have rejected the treatment in question:

> " 'The patient-plaintiff may testify on this subject but the issue extends beyond his credibility. Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that *** treatment. Subjectively he may believe so, with the 20/20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment. Thus *an objective test* is preferable: *i.e., what would a prudent person in the [plaintiff's] position have decided if adequately informed of all significant perils.*' [Citation.]" (Emphasis added.)

The record in this case contained no objective evidence that "a reasonably prudent person in plaintiff's position" would have refused the tubal ligation. The only reasonable inference from the objective evidence is that a reasonable person in plaintiff's position would not have refused the tubal ligation under the circumstances. Moreover, it is a demonstrable, irrefutable conclusion from the undisputed facts that after her last daughter was born and she was now well aware of the risk of failure, plaintiff still elected to have another tubal ligation four months prior to filing this action.

We therefore conclude that plaintiff failed to meet her burden of proof on the issue of proximate cause. The trial court erred in denying defendants' motion for judgment *n.o.v.* Accordingly, the judgment in favor of the plaintiff is reversed and judgment is entered in favor of the defendant hospitals.

Affirmed in part; reversed in part.

SCARIANO, P.J., and STAMOS, J., concur.