BETTY DELZELL, Plaintiff-Appellant, v. J.D. MOORE *et al.*, Defendants-Appellees.

Fifth District   No. 5—90—0690

Opinion filed February 3, 1992.

Law Offices of Robert L. Douglas, Ltd., of Robinson, for appellant.

Richard C. Hayden, of Craig & Craig, of Mattoon, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Betty Delzell, brought an action for damages in the circuit court of Richland County alleging that a popliteal bypass graft was negligently performed on her right leg, as a result of which the leg ultimately had to be amputated above the knee. Named as defendants were Dr. J.D. Moore, the surgeon, and Weber Medical Clinic, the facility where Moore was employed. Following a jury trial, a verdict was returned in favor of defendants and against plaintiff. Plaintiff's post-trial motion was denied, and she now appeals. The central question before us is whether the circuit court abused its discretion when it denied plaintiff's motion to amend her pleadings pursuant to section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—616) to include additional allegations of negligence which came to light for the first time during the testimony of one of defendants' expert medical witnesses. For the reasons which follow, we hold that the denial of plaintiff's motion to amend did constitute an abuse of discretion. We therefore reverse and remand for a new trial.

In 1981, plaintiff sought treatment from Dr. Max Hammer of the Weber Medical Clinic because she was experiencing claudication in her

left leg. Claudication is a symptom exhibited by patients with peripheral vascular disease when the blood flow to their lower extremities is restricted. It manifests itself as a cramping in the extremity which is typically brought on by walking or exercise. Dr. Hammer treated this disorder by performing a popliteal bypass graft on her left femoral artery to improve her circulation.

The surgery was successful. Approximately two years later, however, plaintiff began experiencing similar claudication problems in her right leg, and she returned to the Weber Medical Clinic for further treatment. By this time Dr. Hammer had left the facility, and plaintiff was seen by defendant Dr. Moore. After examining plaintiff and reviewing her history, Dr. Moore performed a popliteal bypass on the femoral artery in her right leg. The material he used for the bypass was a section of plaintiff's saphenous vein. Although there were no immediate complications from the surgery, the bypass ultimately failed, and plaintiff's claudication problems persisted. She eventually sought out Dr. Hammer at his new place of employment at the Memorial Medical Center in Springfield. Dr. Hammer attempted to repair the failed bypass graft surgically using a synthetic patching material known as Gore-Tex. The Gore-Tex patch did not work at all. Within days, it was blocked by blood clots.

Dr. Hammer immediately performed additional surgery to remove the clots and, thereafter, administered anticoagulants to her. When that did not solve the problem, plaintiff was returned to surgery. This time, Dr. Hammer did not try another patch. Instead, he redid the entire bypass graft originally performed by Dr. Moore, replacing the saphenous vein with a new graft made of Gore-Tex. The new Gore-Tex graft worked no better than the Gore-Tex patch. Despite repeated procedures to keep the graft open, it kept becoming blocked by blood clots. The resulting impairment of blood flow eventually caused plaintiff's right leg to degenerate to the point that it had to be amputated above the knee.

Following the amputation, plaintiff brought this medical malpractice action against Dr. Moore and the Weber Medical Clinic. In her complaint, plaintiff sought to hold these defendants liable for the amputation and the attendant damages she sustained on the theory that the amputation would not have been necessary but for the negligent treatment she received from Dr. Moore when he performed the first popliteal bypass graft on her right femoral artery at the Weber Medical Clinic. Specifically, plaintiff alleged that defendants were negligent in that Moore had failed to warn her to refrain from smoking following the bypass graft, that he had used a vein graft which was too

small to adequately provide blood supply to plaintiff's leg, that he had failed to perform proper diagnostic procedures on her, and that he had failed to adequately monitor her progress following surgery.

At trial, defendants presented expert testimony which indicated that Dr. Moore had met the applicable standards of medical care with respect to each of these matters. On both direct and cross-examination, however, one of defendants' experts, a physician named Hoover, opined that plaintiff's condition had not been so serious that surgery on her right leg was mandatory. In his view, other, more conservative, alternatives were available, and the surgery should have been regarded merely as one therapeutic option. According to Dr. Hoover, it would have been a deviation from the standard of medical care if Dr. Moore had failed to apprise plaintiff that these alternatives were available and that the surgery was merely one optional course of treatment.

Other evidence was presented which substantiated that plaintiff had never been told by Dr. Moore that the surgery was anything other than mandatory if she wanted relief from her claudication problem. Based on this evidence, and the testimony of Dr. Hoover, plaintiff sought leave to amend her complaint to conform to the evidence to include as an additional basis for holding Dr. Moore negligent that he had "[f]ailed to advise the plaintiff that the femoral-popliteal bypass surgery was elective in nature and surgery would not of itself prevent future claudication," and that he "[f]ailed to advise the plaintiff of the option of conservative treatment through diet, exercise, quitting smoking and medication to stop leg claudication."

Plaintiff's motion was denied, and the circuit court subsequently refused a jury instruction tendered by plaintiff which would have included these additional theories of liability. As we indicated at the outset of this opinion, the jury ultimately returned a verdict in favor of both defendants and against plaintiff. Judgment was entered on that verdict, and plaintiff's post-trial motion was denied. Plaintiff now appeals arguing, *inter alia*, that she is entitled to a new trial because the circuit court erred in denying her motion to amend her complaint to include the additional allegations of negligence revealed by Dr. Hoover's testimony. We agree.

■ Section 2—616(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a)) provides that

"[a]t anytime before final judgment amendments may be allowed on just and reasonable terms, *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process,

pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim."

In addition, subsection (c) of the statute provides that "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(c).) This statute is to be liberally construed to allow cases to be decided on their merits rather than on technicalities. *Lawry's Prime Rib, Inc. v. Metropolitan Sanitary District* (1990), 205 Ill. App. 3d 1053, 1058, 563 N.E.2d 981, 984.

■ Whether a pleading may be amended pursuant to this statute is a matter committed to the sound discretion of the trial court. That discretion, however, is not unfettered. The overriding consideration is whether allowing the amendment of pleadings will further the ends of justice. (205 Ill. App. 3d at 1058, 563 N.E.2d at 984.) In making this determination, one must consider the timeliness of the proposed amendment and whether the opponent would be prejudiced or surprised by it. (*Carlisle v. Harp* (1990), 200 Ill. App. 3d 908, 915, 558 N.E.2d 318, 322.) Once the trial has commenced, leave to amend is properly denied where the facts upon which the proposed amendment are based were known to the party at the time of his original pleading and no good reason is offered for their not having been filed at that time. (200 Ill. App. 3d at 915, 558 N.E.2d at 322.) This, however, is not such a case.

■ The idea that Dr. Moore may have breached his duty of care by failing to advise plaintiff of the elective nature of her surgery became apparent only after the testimony by Dr. Hoover. Dr. Hoover was a defense witness, not a witness called by the plaintiff. We are aware of nothing in any of the discovery materials which foreshadowed his testimony on this point. Indeed, until he gave his testimony at trial, there was nothing which might reasonably have alerted plaintiff to this as a possible basis of recovery. Defendants were no doubt surprised by Dr. Hoover's opinion, but that surprise can scarcely be attributed to anything plaintiff did or failed to do. There is no dispute that plaintiff acted promptly to include this theory of recovery in her pleadings as soon as it became known to her.

Defendants argue that the circuit court nevertheless acted properly because allowing the amendment would have violated Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)). In support of their position, defendants rely on that portion of the rule which provides:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings." (134 Ill. 2d R. 220(d).)

Defendants overlook, however, that Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)) also provides that an expert "shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." The challenged opinions by Dr. Hoover fall squarely within this category.

The circuit court correctly recognized that Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)) was not an impediment to plaintiff's motion to amend. The major problem, in the circuit court's view, was that plaintiff offered no expert testimony to show that Dr. Moore's failure to apprise her of the elective nature of the surgery was a proximate cause of the injury she ultimately sustained. This determination was based on the principle that in all but the most gross malpractice cases there must be expert evidence not only as to the negligence of the defendant, but also as to a proximate causal connection between the negligence and the injury suffered by the plaintiff. (See *St. Gemme v. Tomlin* (1983), 118 Ill. App. 3d 766, 769, 455 N.E.2d 294, 296.) We agree that this standard is applicable where the alleged negligence consists of a physician's failure to adequately apprise a patient of the risks of and alternatives to a particular surgical procedure (see *St. Gemme*, 118 Ill. App. 3d at 769, 455 N.E.2d at 296; *Marshall v. University of Chicago Hospitals & Clinics* (1987), 165 Ill. App. 3d 754, 757, 520 N.E.2d 740, 742), which is the type of claim plaintiff here sought to assert through her proposed amendments to her complaint. We cannot agree, however, that the record was devoid of evidence of the requisite causal link.

To establish proximate cause in a failure-to-warn case, it is not enough for the plaintiff to subjectively assert at trial that she would have declined treatment if only she had been informed of the danger. Rather, an objective test applies, namely, whether a reasonable person, in possession of the allegedly omitted information, would have rejected the treatment in question. (*Marshall v. University of Chicago Hospitals & Clinics*, 165 Ill. App. 3d at 757-58, 520 N.E.2d at 742.) This standard cannot be met where the evidence shows that there is no reasonable alternative to the treatment (see *St. Gemme*, 118 Ill. App. 3d at 769, 455 N.E.2d at 296), but that is not the case here.

Although plaintiff suffered significant pain as a result of the claudication and was in need of some kind of immediate relief, Dr. Hoover's

testimony plainly demonstrated that conservative, nonsurgical treatment was, in fact, available for her condition. The jury could certainly have concluded that this nonsurgical option was, objectively, a more prudent course than surgery. Indeed, the conclusion that a reasonable person might reject surgery in favor of the conservative treatment is implicit in the very assertion by Dr. Hoover that Dr. Moore should have apprised plaintiff of the surgery's elective nature. After all, if surgery were the only reasonable alternative, if the nonsurgical approach were something that no reasonable person would select if advised of all the significant perils and alternatives, then the surgery would not really have been "elective" at all. And if it were not elective, it could not possibly have been a breach of the standard of care for Moore to have neglected to inform plaintiff that she had any other choices. There would not have been any other real choices to tell her about.

We acknowledge that following a conservative, nonsurgical course of treatment would not necessarily have saved plaintiff's leg in the long run. She may ultimately have had to suffer amputation whether she underwent surgery or not. Nevertheless, there was ample evidence from which the jury could reasonably have concluded that having the surgery when she did not only failed to alleviate any of her pain, but actually hastened the time when amputation became unavoidable. Once the surgery was performed, there was no turning back. The possibility of any less drastic remedial measures was eliminated. At the very least, the medical evidence established that what should have been optional surgery was directly responsible for causing her to lose her leg earlier than she would otherwise have had to. The premature loss of a limb is unquestionably a cognizable basis for recovering damages in a medical malpractice action, and plaintiff should have been permitted to amend pleadings so that it could be presented for the jury's consideration. The circuit court's refusal to allow her to do so was an abuse of discretion. She is therefore entitled to a new trial. In view of this conclusion, we need not address her other arguments on appeal.

For the foregoing reasons, the judgment of the circuit court of Richland County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

RARICK and WELCH, JJ., concur.