EFFIE HERRON, Adm'r of the Estate of Cynthia Herron, Deceased, Plaintiff-Appellant, v. PATRICK ANDERSON *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—3664

Opinion filed April 8, 1993.—Rehearing denied January 12, 1994.

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg and James M. Geraghty, of counsel), for appellant.

Connelly, Mustes & Schroeder, of Chicago (John J. Mustes and John R. Ostojic, of counsel), for appellees Illinois Masonic Medical Center and Andrew Perez.

Cassiday, Schade & Gloor, of Chicago (Bruce M. Wall, Bernice Jacobs, and Lynn D. Dowd, of counsel), for appellee Daniel Yamshon.

JUSTICE COUSINS delivered the opinion of the court:

Effie Herron, plaintiff-appellant (plaintiff), appeals from a judgment entered on a jury verdict in a wrongful death/medical malpractice action where plaintiff's daughter (decedent) died of an acute asthmatic attack and respiratory failure.

Plaintiff sought to recover damages due to the alleged professional negligence of defendants Dr. Andrew Perez (Dr. Perez), Dr. Patrick Anderson (Dr. Anderson), Illinois Masonic Medical Center (Masonic), and Dr. Daniel Yamshon.

At the conclusion of trial, the jury returned a verdict in favor of plaintiff and against Dr. Perez and Masonic in the amount of $325,000 but because of an agreement entered into prior to trial between plaintiff and Masonic, plaintiff received $450,000. The jury found in favor of Dr. Anderson and against plaintiff. The judgment has been satisfied.

The issues presented for review are: (1) whether this appeal should be dismissed because the judgment appealed from was fully satisfied; (2) whether the trial court erred in refusing to permit plaintiff to amend her complaint to add an additional physician; (3) whether plaintiff is entitled to a new trial because of the cumulative effect of alleged errors which occurred during trial: (a) whether the trial court's denial of plaintiff's motion for mistrial constituted error, (b) whether the trial court's refusal to redact testimony of a telephone conversation and decedent's medical records constituted error, (c) whether the trial court's denial of plaintiff's motion to strike the hearsay testimony of the treating paramedic constituted error, (d) whether the trial court erred in overruling plaintiff's objection, refusing to grant a sidebar, and refusing to strike testimony of an expert constituted error, and (e) whether the trial court erred in refusing two of plaintiff's tendered jury instructions; and (4) whether the trial court's denial of plaintiff's motions for directed verdict against the defendants (and motion for judgment notwithstanding the verdict against defendant Dr. Anderson) constituted error.

We affirm.

BACKGROUND

The 26-year-old decedent had asthma since childhood. During the course of her life, decedent had been treated by doctors who prescribed various theophylline- and non-theophylline-based medications which provide relief to an asthmatic.

During July 1982, decedent was taking the following medications for asthma relief: Constant-T, Theo-Dur, and Quibron. The record also indicated that immediately prior to her death, decedent had in her control Brethine, a nontheophylline medication.

On July 13, 1982, decedent was seen by Dr. Daniel Yamshon of Masonic. Decedent complained of breathing difficulty, shortness of breath, coughing, and wheezing. It was at this time that Dr. Yamshon

learned that decedent was an asthmatic who was taking Theo-Dur and Brethine. Decedent had been taking Aristocort since 1977 but was not using it when she saw Dr. Yamshon. Dr. Yamshon instructed decedent to continue to take her past medications. Dr. Yamshon testified that his records indicate that he prescribed Vibra-Tabs for decedent.

On July 17, 1982, Dr. Ronald West Lee of Masonic saw decedent. Decedent complained of fever, nausea, vomiting, and infection. Decedent was taking Theo-Dur, Quibron, and Brethine for her asthma. Dr. Lee testified that his notes indicate that he discharged decedent without prescribing any new medications.

On July 19, 1982, decedent was seen by Dr. Perez who, at that time, was a resident at the Masonic Acute Care Facility. Dr. Perez testified that decedent was taking Quibron, Theo-Dur, and Constant-T (theophylline medications) for her asthma. Decedent was also taking Isu-prel, which is a non-theophylline-based medication.

Dr. Perez ascertained decedent's medical history and discussed her care with Dr. Anderson, Dr. Perez' supervisor. Dr. Anderson and Dr. Perez concurred that on July 19, 1982, decedent did not exhibit signs of theophylline toxicity and that as decedent was not toxic, there was no need to hospitalize her.

Plaintiff contends that as decedent was first seen by a nurse who recorded that decedent complained of a temperature, inability to sleep, nausea, and vomiting for the past week, Dr. Perez should have found theophylline toxicity to be a factor. Dr. Perez, however, claimed that decedent complained of lethargy, headaches, and inability to sleep, which he noted on the same record as the nurse.

Upon discharge, Dr. Perez reduced decedent's theophylline medications from three to one: Constant-T. Dr. Perez testified that he prescribed a nontheophylline medication, Brethine, for asthma, and Chlorohydrate, for insomnia. Decedent was instructed to return on July 20, 1982, for tests, including an aminophylline test which determines a patient's serum theophylline level.

On July 20, 1982, decedent returned to Masonic, had her blood drawn, and went home. Later that day, decedent's aminophylline test revealed a level of 53, the normal range being 10 to 20.

Upon learning of decedent's theophylline level, Dr. Perez telephoned decedent, advised her of her high theophylline level and that her blood was toxic, and instructed her to stop taking certain medications. During that conversation, plaintiff, decedent's mother, initially spoke to Dr. Perez. After handing the telephone to decedent, she picked up another phone and listened to a portion of the telephone conversation. Plaintiff stopped listening in on the telephone conversa-

tion when decedent called for her and asked her to bring decedent's medication to her. Plaintiff testified that as Dr. Perez told decedent to stop taking certain medications, decedent would hand the medication to plaintiff. Plaintiff testified that all of the medications were given to her except for a spray.

Dr. Perez further instructed decedent to telephone him or admit herself into the nearest emergency room should she develop shortness of breath or other symptomology.

On July 21, 1982, decedent had two asthma attacks. She survived the first one, which occurred in the morning. Later that evening, she had her second asthma attack, which led to respiratory arrest. Plaintiff directed her son to call paramedics. Plaintiff gave a paramedic the medications. The paramedic recorded that decedent had been taking an inhaler mist, Brethine, and Aristocort. Decedent was taken to St. Anne's Hospital and was pronounced dead.

On January 23, 1984, plaintiff brought an action against Illinois Masonic Medical Center, Dr. Andrew Perez, Dr. Patrick Anderson, and Dr. Daniel Yamshon alleging medical negligence arising from the care and treatment rendered to plaintiff's daughter (decedent) in July 1982.

Six years after the filing of the initial action, plaintiff filed two motions to amend her complaint and a motion to join Dr. Ronald West Lee as an additional party-defendant. The trial court denied plaintiff's motions on April 11, 26, and June 4, 1990.

Prior to the commencement of trial, plaintiff and Masonic entered into an agreement whereby Masonic would, in the event of an adverse settlement of less than $6 million, pay plaintiff the sum of $450,000 in consideration for which plaintiff agreed not to bring further action against Masonic until she exhausted all rights of recovery from other defendants to the full extent of their insurance coverage. Trial commenced on August 6, 1990.

On August 10, 1990, following his testimony, Dr. Yamshon settled for $100,000 and was subsequently dismissed.

On August 20, 1990, the jury returned a verdict in favor of plaintiff and against Masonic and Dr. Perez in the amount of $325,000. The jury returned a verdict in favor of Dr. Anderson and against plaintiff. Plaintiff filed motions for directed verdict, judgment notwithstanding the verdict, and a new trial, all of which were denied. This appeal followed.

Opinion

I

Defendants Masonic and Dr. Perez contend that the trial court erred in refusing to vacate the judgment and dismiss the action because the judgment was fully satisfied and that, pursuant to Supreme Court Rule 361 (134 Ill. 2d R. 361), this appeal should be dismissed. Plaintiff contends that Masonic and Dr. Perez have waived this issue. We agree with plaintiff.

■■ Masonic and Dr. Perez have waived this dismissal issue because they did not file the requisite cross-appeal. If a party fails to file a cross-appeal raising as an issue an adverse finding, then that party has waived that issue because he has not effectively preserved it for review. *Burrgess v. Industrial Comm'n* (1988), 169 Ill. App. 3d 670, 677, 523 N.E.2d 1029.

For completeness, however, we will discuss this issue. Supreme Court Rule 361 (134 Ill. 2d R. 361) pertains to motions in reviewing courts.

The Code of Civil Procedure section 12—183(h) (Ill. Rev. Stat. 1989, ch. 110, par. 12—183(h)) provides:

> "Upon the filing of a release or satisfaction in full satisfaction of judgment, signed by the party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the action."

Masonic and plaintiff entered into a pretrial agreement whereby Masonic would, in the event of an adverse settlement of less than $6 million, pay plaintiff the sum of $450,000 in consideration for which plaintiff agreed not to bring further action against Masonic until she exhausted all rights of recovery from other defendants to the full extent of their insurance coverage. The trial court, in an order dated November 9, 1990, found that such an agreement was entered, that judgment on the August 20, 1990, jury verdict was $325,000, that payment of $450,000 pursuant to the agreement would be paid within 72 hours pursuant to Code of Civil Procedure section 12—183 (Ill. Rev. Stat. 1989, ch. 110, par. 12—183), and that acceptance of funds would not act as a waiver or affect plaintiff's rights to post-trial relief or to appeal.

Masonic now asserts that the $450,000 payment constituted satisfaction thus rendering this appeal moot.

However, section 12—183 does not preclude the judgment creditor's right to an appeal. (*In re Marriage of Pitulla* (1990), 202 Ill.

App. 3d 103, 110, 559 N.E.2d 819.) The purpose of section 12—183 is to serve as proof of payment of the judgment, barring any further attempts by the judgment creditor to enforce the judgment, and to stop the accrual of post-judgment interest. (*Pitulla*, 202 Ill. App. 3d at 110.) Once a satisfaction of judgment has been filed with the trial court, the statute places a limitation on the trial court's jurisdiction to conduct further proceedings on the issue but it does not bar an appeal. *Pitulla*, 202 Ill. App. 3d at 110.

Therefore, based on section 12—183, *Pitulla*, and the fact that Masonic and Dr. Perez have waived this issue, we decline to dismiss this appeal.

## II

Plaintiff contends that the trial court erred in denying her motion to amend the complaint to add an additional party-defendant. We disagree.

Trial courts should permit pleading amendments if it will further the ends of justice. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272-73, 586 N.E.2d 1211.) The trial court has the broad discretion in ruling on a motion to amend the pleadings prior to final judgment. *Loyola Academy*, 146 Ill. 2d at 273.

A denial of a motion to amend will not be considered to be prejudicial error unless there has been an abuse of discretion. *Loyola Academy*, 146 Ill. 2d at 273-74.

Factors to be considered in determining whether the trial court abused its discretion are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy*, 146 Ill. 2d at 273.

■ Plaintiff contends that the trial court should have allowed her to amend her complaint because Masonic initially misidentified the employee who treated decedent on July 17, 1982, and that she did not know the true identity of Dr. Ronald Lee until he was produced for deposition, which occurred approximately four months before trial.

However, plaintiff has failed to demonstrate how the trial court abused its discretion. As for the first factor, adding Dr. Lee would not have cured a defective pleading. Plaintiff's action arose out of alleged negligent actions taken by Masonic, Dr. Perez, and Dr. Anderson which occurred on July 19, 1982, and thereafter. Dr. Lee saw decedent on July 17, 1982. Therefore, the complaint against Masonic, Dr.

Perez, and Dr. Anderson is not defective and does not pertain to Dr. Lee's treatment of decedent. Regarding the second factor, defendants might have sustained prejudice or surprise by the proposed amendment so close to trial. As for the third factor, a trial court could have found the requested amendment to be untimely. Finally, regarding the last factor, plaintiff attempted to amend her complaint to add Dr. Lee three times but the trial court denied her requests.

While plaintiff claims that the employee who treated decedent on July 17, 1982, was misidentified by Masonic, plaintiff did have the benefit of discovery. The record is silent as to what discovery, if any, plaintiff conducted regarding the treating physician prior to the eve of trial.

In light of the above analysis, the proposed amendment would not have furthered the ends of justice. Therefore, the trial court did not abuse its discretion in denying plaintiff's motions to amend her complaint to add Dr. Lee as a party-defendant.

### III

Plaintiff next contends that she is entitled to a new trial because of the cumulative effect of alleged errors which occurred during the trial. We disagree.

### A

Plaintiff contends that the trial court erred in denying her motion for mistrial because of statements that defense counsel made during opening statement.

The decision to grant or deny a mistrial rests within the sound discretion of the trial court and will not be disturbed and reviewed on appeal absent a clear abuse of discretion. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 844, 462 N.E.2d 645.) A mistrial should be declared only as a result of an occurrence of such character and magnitude as to deny the moving party a fair trial. (*Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 913, 410 N.E.2d 249.) The moving party must demonstrate actual prejudice as a result thereof. *Benuska*, 87 Ill. App. 3d at 913.

Further, comments made by an attorney in an opening statement to the jury that certain evidence will be introduced are proper if made in good faith and with reasonable ground to believe that the evidence is admissible even if later excluded. In absence of good faith, however, the rule is to the contrary. *Yedor v. Centre Properties, Inc.* (1988), 173 Ill. App. 3d 132, 143-44, 527 N.E.2d 414; *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 640, 360 N.E.2d 1324.

During opening statements, Mr. Mustes, defense counsel for Masonic and Dr. Perez, addressed the jury and stated as follows:

"Dr. Perez instructed decedent not to take any of her theophylline-based drugs, Constant-T, Quibron and Theo-Dur, because of these unusually high aminophylline levels in her blood.

The evidence will show that the decedent continued and was instructed to continue to take Brethine, Isuprel and Aristocort for the management of her asthma."

It appears that Mr. Mustes' comments were based upon the paramedic report. Mr. Mustes' comments were also consistent with plaintiff's trial testimony. The paramedic's report reflects that decedent, prior to her death, was taking Aristocort, Brethine, and a mist inhaler. The paramedic who recorded this information so testified. Plaintiff testified that on July 20, 1982, Dr. Perez reduced the medications that decedent was taking. Based on the paramedic's testimony and plaintiff's testimony, the trial court did not err in denying plaintiff's motion for mistrial because there was no showing of bad faith.

B

Plaintiff contends that the trial court erred in refusing to redact testimony of a telephone conversation, a portion of which plaintiff overheard, and testimony of decedent's medical records.

The Code of Civil Procedure section 8—401 (Ill. Rev. Stat. 1985, ch. 110, par. 8—401) provides in part:

"Where in any action or proceeding, the claim or defense is founded on a *** record or document, any party *** may testify to his or her *** record or document and the items therein contained ***."

The Code of Civil Procedure section 8—201 (Ill. Rev. Stat. 1983, ch. 110, par. 8—201) (Dead Man's Act) provides in pertinent part:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the

deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event.

(b) If the deposition of the deceased or person under legal disability is admitted in evidence on behalf of the representative, any adverse party or interested person, if otherwise competent, may testify concerning the same matters admitted in evidence.

(c) Any testimony competent under Section 8—401 of this Act, is not barred by this Section."

■ The purpose of the Dead Man's Act is to remove the temptation of a survivor to testify to matters which could not have been rebutted by reason of death of the only other party to the conversation. *In re Estate of Babcock* (1985), 105 Ill. 2d 267, 274, 473 N.E.2d 1316.

At issue are a telephone conversation between Dr. Perez and decedent, a portion of which plaintiff overheard, and medical records about which defendants and other witnesses testified.

■ The rule of completeness provides that whenever a statement or writing has been admitted, then the remainder or so much thereof should be admitted so as to place the originally offered statement into proper context so that a true meaning may be conveyed to the jury. *Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 556, 356 N.E.2d 779.

It is within the sound discretion of the trial court to permit, in the interests of justice, the omitted part of a statement to explain or refute an alleged inference. *Buczyna v. Cuomo & Son Cartage Co.* (1986), 146 Ill. App. 3d 404, 413, 496 N.E.2d 1116.

Plaintiff testified that she listened to a portion of the telephone conversation between Dr. Perez and decedent. Dr. Perez testified as to other portions of the telephone conversation which plaintiff did not overhear.

Plaintiff also attempted to redact parts of the medical records which dealt with decedent's subjective complaints. Plaintiff states that Dr. Perez should have ordered a stat theophylline test on July 19, 1982, because the nurse noted on decedent's chart that decedent was complaining of temperature, inability to sleep, nausea, and vomiting for the past week. Those symptoms, according to plaintiff, are indicia of theophylline toxicity. Dr. Perez, however, on that same record, indicated that decedent complained of lethargy, headaches, and inability to sleep. He so testified.

■ Pursuant to the rule of completeness, the trial court did not err in denying plaintiff's request to redact testimony pursuant to the Dead Man's Act.

Further, the trial court properly rejected plaintiff's request to redact the medical records because they were admissible. The testimony regarding medical records falls within subsection (a) of the Dead Man's Act. Decedent's medical records are also admissible as "business records" pursuant to section 8—401, which provides for the admission into evidence of records used in the regular course of business.

Plaintiff incorrectly asserts that medical records cannot be considered a "business record" pursuant to Supreme Court Rule 236(b) (107 Ill. 2d R. 236(b)):

"Although medical records or police accident reports may otherwise be admissible in evidence under the law, subsection (a) of this rule does not allow such writings to be admitted as a record or memorandum made in the regular course of business."

Supreme Court Rule 236 allows the admission of hospital medical records where a proper foundation is laid and will not affect the common law "business records" exception to the hearsay rule. (*Casey v. Penn* (1977), 45 Ill. App. 3d 573, 583, 360 N.E.2d 93.) Furthermore, the objective of the Dead Man's Act is fairness. *Vazirzadeh v. Kaminski* (1987), 157 Ill. App. 3d 638, 645, 510 N.E.2d 1096.

"A conversation with a patient regarding symptoms, treatment, etc., or the relevant conclusions resulting therefrom, can be noted on the patient's chart. The more complete the patient's records, the better informed is the medical staff and the higher the standard of care is likely to be. *That medical records are admissible under the rules controlling the admission of business records is but an extrinsic benefit.*" (Emphasis added.) *Vazirzadeh*, 157 Ill. App. 3d at 645, 510 N.E.2d 1096.

C

■ Plaintiff contends that the trial court erred in denying her motion to strike the paramedic's testimony.

Plaintiff's contention is untimely and she has waived this issue because she did not object. (*Chicago Housing Authority v. Rose* (1990), 203 Ill. App. 3d 208, 214, 560 N.E.2d 1131.) Plaintiff only moved to strike after Masonic and Dr. Perez completed their cross-examination of the paramedic.

Statements made to a person rendering medical care describing an individual's medical condition are admissible as an exception to the hearsay rule. See *Caponi v. Larry's 66* (1992), 236 Ill. App. 3d 660, 676, 601 N.E.2d 1347. See also *Greinke v. Chicago City Ry. Co.* (1908), 234 Ill. 564, 571, 85 N.E.2d 327.

The record established that plaintiff's son called the paramedic for purposes of rendering medical care and treatment to decedent. Therefore, the paramedic was a treating medical person. His testimony as to medications that decedent was taking was reliable and admissible as an exception to the hearsay rule. Moreover, plaintiff admitted that she gave the paramedic the medication that decedent had been using.

In addition, the paramedic's testimony was admissible as past recollection recorded.

"[E]vidence may be admitted under the doctrine of past recollection recorded where: (1) the witness had firsthand knowledge of the recorded event; (2) the written statement was made at or near the time of the event and while the witness had a clear and accurate memory of it; (3) the witness lacks present recollection of the event; and (4) the witness can vouch for the accuracy of the written statement." *Roeseke v. Pryor* (1987), 152 Ill. App. 3d 771, 779-80, 504 N.E.2d 927.

As treater, the paramedic had firsthand knowledge of the recorded event. The written statement that he wrote was made around the time of the event and while he still had an accurate memory of the event. At trial, the paramedic had to read from his report because he did not remember the event. The paramedic vouched for the accuracy of his report.

Based upon the paramedic's testimony, an exception to the hearsay rule existed and his testimony was properly allowed.

D

■ Plaintiff next contends that the trial court erred in overruling her objection, refusing her request for a sidebar, and refusing to strike testimony of an expert witness during the expert's cross-examination.

The scope and extent of cross-examination and re-cross-examination are within the trial court's discretion. *Johns-Manville Products Corp. v. Industrial Comm'n* (1979), 78 Ill. 2d 171, 181, 399 N.E.2d 606.

Direct examination proceeded as follows:

"MR. GOLDBERG [Plaintiff's Attorney]: Doctor, isn't it a deviation from the acceptable standard of care in July 19 of 1982,

if a patient comes in with the symptoms that Cynthia Herron [decedent] had, tells the doctor that she's on three theophyllines, for the doctor to fail to look at the bottles if they're available?

JESSE HALL, M.D.: To fail to look at them?

MR. GOLDBERG: Yes.

JESSE HALL, M.D.: Yes, that would be a deviation."

Plaintiff's attorney and the witness further stated:

"MR. GOLDBERG: So, just so I'm clear, if the doctors are considering theophylline toxicity, which they were, on July 19, 1982, it would be a deviation from the acceptable standard of medical practice as it existed back then not to determine the dosage of theophylline she was on?

JESSE HALL, M.D.: Correct."

Direct examination continued:

"MR. GOLDBERG: So that it would be a deviation from the acceptable standard back then, on July 19, 1982, to discharge her from the hospital until you knew what the serum level theophylline was; is that right?

JESSE HALL, M.D.: Given all—

MR. MUSTES [Defendants Masonic and Dr. Perez' Attorney]: Assuming the facts.

THE COURT: Assuming the facts in your hypothetical?

MR. GOLDBERG: Absolutely.

JESSE HALL, M.D.: Fine.

And those facts being the given dose, the high pulse, the nausea and vomiting as a current symptom, and the insomnia?

MR. GOLDBERG: Yes.

JESSE HALL, M.D.: The answer is yes.

MR. GOLDBERG: Now, Doctor, am I correct, isn't it your opinion that Dr. Perez deviated from the acceptable standard on July 19, 1982, if he discharged Cynthia Herron on 1800 milligrams of Constant-T a day?

JESSE HALL, M.D.: Yes."

Plaintiff's attorney and the witness continued:

"MR. GOLDBERG: So that if Dr. Perez discharged her on that prescription, he deviated from the acceptable standard of care?

JESSE HALL, M.D.: Correct.

* * *

MR. GOLDBERG: Am I correct, Doctor, that it would be a deviation from the acceptable standard of medical practice back

in July of 1982 for a physician to give a type of medication without knowing the medication and the particular dosage for that medication that he was giving; is that right?

JESSE HALL, M.D.: Yes."

The exchange giving rise to the objection:

"MR. MUSTES: Doctor, turning your attention to the 7/19/82 note, can you see it from there?

JESSE HALL, M.D.: I have a copy.

MR. MUSTES: It's your opinion, isn't it, that Dr. Perez' and Dr. Anderson's care and treatment of the plaintiff's decedent on that day did not deviate from accepted standards for care in the community?

JESSE HALL, M.D.: That's correct.

MR. GOLDBERG: I'm going to object. It's contrary to the testimony he just gave.

THE COURT: On the 19th you said?

MR. MUSTES: On the 19th.

MR. GOLDBERG: That's contrary to his testimony.

THE COURT: On the 19th? Overruled.

JESSE HALL, M.D.: Correct.

MR. GOLDBERG: May I be heard for a moment then?

THE COURT: No. Overruled."

The trial court properly overruled plaintiff's objection and denied a sidebar. The questions which plaintiff's attorney propounded were in the form of hypotheticals while defendants' attorney's question was direct. Whether the hypothetical conformed to the facts was a question of fact for the jury.

E

■ Plaintiff contends that the trial court erred in refusing her proposed jury instructions 15 and 12.

Supreme Court Rule 239(a) (107 Ill. 2d R. 239(a)) provides:

"Whenever Illinois Pattern Jury Instructions (IPI) contain an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law."

Each party to the case has an absolute right to have the jury instructed fairly and correctly. *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 879, 371 N.E.2d 692.

Illinois Pattern Jury Instructions, Civil, No. 20.01 (2d ed. 1981) (hereinafter IPI Civil 2d) is the "Issues In The Case" model jury instruction. Plaintiff sought to incorporate the following italicized portion into jury instruction 15:

"The plaintiff further claims that one or more of the foregoing was a proximate cause of the death of Cynthia Herron *and/or increased the risk of her dying from an asthma attack and/or decreased the probability of her recovering from an asthma attack.*" (Emphasis added.)

However, IPI Civil 2d No. 20.01 should read:

"The plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries."

We perceive no error because the trial court gave an appropriate IPI instruction.

In medical malpractice actions, the standard of care testimony must come from expert medical witnesses. *St. Gemme v. Tomlin* (1983), 118 Ill. App. 3d 766, 769, 455 N.E.2d 294.

As for jury instruction 12, plaintiff sought to delete the word "expert" from the following:

"The only way in which you may decide whether the defendants possessed and applied the knowledge and used the skill and care which the law required of them is from evidence presented in this trial by doctors called as *expert* witnesses \*\*\*." (Emphasis added.)

In light of the applicable law, the trial court did not err.

## IV

■■■ Plaintiff contends that the trial court erred in denying plaintiff's motion for a directed verdict against Dr. Perez and Masonic and in denying plaintiff's motion for a directed verdict or judgment notwithstanding the verdict against Dr. Anderson. We disagree.

A verdict should be directed or a judgment notwithstanding the verdict entered where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

Plaintiff moved for a directed verdict as to the issue of negligence at the close of the case. The court denied plaintiff's motion, finding that there was some evidence that Dr. Perez was not negligent. An expert witness and defendant Anderson supported Dr. Perez' care on July 19, 1982.

Plaintiff also moved for a directed verdict or judgment notwithstanding the verdict against Dr. Anderson. The evidence, when viewed most favorably to Dr. Anderson, does not support plaintiff's contention that the jury returned an unreasonable verdict.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

MURRAY and McNULTY, JJ., concur.