THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY DUCKWORTH, Defendant-Appellant.

Fourth District   No. 16750

Opinion filed August 7, 1981.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil Greanias, State's Attorney, of Decatur (Robert J. Biderman and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions by jury verdicts of the offenses of deviate sexual assault and armed robbery in violation of sections 11—3 and 18—2 of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—3, 18—2.) He was sentenced to 25 years' imprisonment for deviate sexual assault and to a concurrent term of 10 years' imprisonment for the armed robbery.

The offenses were committed on January 21, 1980, when defendant, in the basement of the Decatur Public Library, approached the victim from behind and placed a sharp, shiny, silver object to her neck. Defendant asked the victim for money and she gave him $3. Defendant then forced the victim to her knees and forced her to place his penis in her mouth. The victim and defendant then walked to the middle of the library, she screamed and defendant then ran up the stairs and out the door. She identified defendant at trial, and her testimony and identification were corroborated by three other occurrence witnesses, who were library employees.

Defendant's defense was insanity. Dr. Dale Sunderland, a psychiatrist, testified for the defendant. The State stipulated as to his expert qualifications and Sunderland stated that he examined defendant twice. Sunderland's diagnosis of defendant was "probably schizophrenia." He testified that given the legal definition of insanity, the defendant was not legally sane at the time he committed these offenses. Sunderland admitted on cross-examination that he felt that defendant had lied on a personal inventory test, demonstrating that defendant was trying to achieve certain results. In Sunderland's opinion defendant was moderately psychotic on the date of the offense.

In rebuttal, the State called Steve Rathnow to testify. Prior to his testimony, Rathnow was questioned by the State and defense counsel. He stated that he was employed as a staff psychologist at the Decatur Mental Health Center. Rathnow has a bachelor's degree in psychology and a master's degree in clinical psychology, but is not a registered psychologist in Illinois. He stated that under the laws of the State he is not eligible to take the qualifying test for registration. He spoke with defendant while he was in jail.

Defense counsel argued that Rathnow was not an expert and should be prevented from testifying because he had presented himself to defendant as a psychologist. The court indicated its belief that the witness was not being qualified as an expert, and noted that a layman may express an opinion as to a person's sanity. The prosecutor stated that he did not intend to call the witness as an expert. The trial court thus denied defendant's motion to prevent Rathnow from testifying.

Rathnow then testified before the jury as to his education and employment. He testified that he met defendant in February 1980, at which time defendant complained of hearing voices and of an inability to sleep. Defendant appeared anxious, upset, and nervous. After speaking with defendant, Rathnow consulted Dr. Sunderland, who prescribed medication for defendant. Rathnow stated the purpose of the medication was to alleviate the problems of which defendant had complained to Rathnow. After the medication was administered, defendant continued to complain about hearing voices, although the content of the voices changed. Rathnow testified that the first dose of medication was totally ineffective, and after an increase in dosage the voices changed.

Dr. Robert Chapman, a psychiatrist, also testified for the State as a rebuttal witness. Chapman interviewed the defendant on two occasions and administered a personality inventory test to defendant. Chapman stated that it was his opinion that at the time of the incident in this case defendant suffered from a mental disorder "of three types, one, alcoholism, two, a depression, non-psychotic, and three, chemical substance abuse." But it was Chapman's opinion that these mental disorders did not incapacitate defendant from the standpoint of defendant's appreciation of the criminality of his behavior. He stated that defendant's acts in committing the offenses were carried out in a bold, direct manner which indicated no lack of appreciation of the criminality of his conduct. Defendant's evasive action in running out of the library also supports the proposition, according to Chapman, that defendant knew his behavior was criminal. Chapman noted that no clinical evidence indicated that defendant could not conform his behavior to the law, but that the only information showing a substantial impairment came from the defendant himself in his statements about voices telling him what to do. After a detailed discussion of these voices, Chapman was of the opinion that defendant had not heard any voices but was fabricating his symptoms, or exaggerating them to such a degree that they were almost unbelievable.

Chapman also stated that a psychotic can still reason and exercise judgment and the fact that a person is psychotic does not establish that he is unable to conform his acts to the law. Chapman also stated that schizophrenia, in and of itself, does not indicate that a person cannot conform his acts to the law.

Defendant's first contention on appeal from his conviction is that Rathnow's testimony was that of an expert witness without proper qualifications. The agreement between the court and the parties was clear—Rathnow was to testify as a nonexpert person. Thus, the question presented is whether Rathnow's testimony was beyond the scope of that which he could properly state as a lay witness. Specifically, defendant complains of the following colloquy:

"Q: [Assistant State's Attorney]: When you initially spoke to the

defendant and he described hearing voices, did you come aware that he was being truthful?

A: Yes, I did.

Q: Subsequent to the taking of the medicine, did you continue to believe him when he said that he was hearing voices?

MR. FINNEY [defense counsel]: Objection. My objection is that the man is not qualified as an expert, and he's certainly not qualified to give an opinion on whether somebody is telling the truth.

THE COURT: He may answer.

A: Ah, in my conversations with him he continued to say that he was hearing voices, they, they obviously were bothering him much less and he in fact said those words, he was sleeping better, ah, he seemed much less anxious. Ah, and then for no apparent reasons his complaints became more and more insistent, saying that the voices were bothering him much more at one point, although the anxiety that I had observed were not present at that time.

Q: And the fact that he began to re-complain of the voices, did that comport with your experience with someone who was truly hearing voices?

A: Frankly no, particularly when they were on the medication that he was taking and the medicine had obviously had considerable effect on him until that point."

In *People v. Beller* (1977), 45 Ill. App. 3d 816, 360 N.E.2d 130, the court found no error in the introduction of an opinion by a nonexpert witness based on his personal observations. Basically, Rathnow testified to his observations and to what defendant told him about his condition. Although he did make reference to medication which had been prescribed by a psychiatrist, it was merely an observation that the medication had had a visible effect on the defendant.

■■ Rathnow's testimony was brief and merely cumulative, and in our opinion did not have a prejudicial effect on defendant's case. Dr. Chapman testified to his opinion as to defendant's truthfulness and went into much greater detail than Rathnow in discussing his opinion that defendant was not being truthful in stating that he was hearing voices. Any error in the admission of evidence is usually harmless when the facts involved are established by other competent evidence. *People v. Williams* (1976), 36 Ill. App. 3d 680, 344 N.E.2d 648.

Defendant next complains that he was denied a fair trial when the State was allowed, over defense objection, to ask a question of Dr. Sunderland, the defense psychiatrist, which defendant asserts inferred that if found insane defendant would "escape the punishment of criminal law." The testimony complained of follows:

"Q [Assistant State's Attorney]: Is it not true that you have a

number of patients who you would describe as moderately psychotic?

A [Dr. Sunderland]: Yes.

Q: Then is it your opinion that each of these patients could also escape the punishment of the criminal law?

MR. FINNEY [defense counsel]: I will object to that as being an improper question.

THE COURT: I think it is proper cross-examination.

A [Dr. Sunderland]: Would you repeat the question.

Q: Is it not true then that a number of your patients, given the fact that they are moderately psychotic, could escape the punishment of criminal law?

A: Possible."

While defendant did object to this testimony at trial, he failed to include this as an issue in his post-trial motion and thus the issue has been waived. *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.

While we find the use by the prosecutor of this charged phrase to have been improper, we do not find that it constitutes plain error. It has been held to be improper for either side in a criminal case to argue the punitive effect of the jury's verdict. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.) The use of the phrase "escape the punishment of criminal law" can be viewed to have implied that defendant might be set free as a result of a finding of insanity, and thus it was error to make such an argument to the jury. However, the effect of finding defendant to be insane was made clear to the jury in the verdict forms which stated that if found insane defendant would be "not guilty" of the crime, and thus implied he would not be punished under criminal law. We do not therefore find the error to have been as grave as in cases where counsel discuss with the jury the sentencing alternatives available (*People v. Burgard* (1941), 377 Ill. 322, 36 N.E.2d 558), and we conclude that substantial justice does not require reversal on that basis.

Defendant also asserts that the foregoing error was aggravated by the trial court's refusal to allow defendant to bring out the fact that if found insane defendant could be committed to an institution by the State. Although we find that the prosecutor's remarks were improper, we cannot condone a cure which would compound the error. The punitive effect of the verdict, or the lack thereof, is improper as evidence or argument, and the trial court did not err in prohibiting defendant from presenting such evidence.

The defendant next alleges that the prosecutor's closing argument incorrectly instructed the jury on the legal definition of insanity. The objectionable comment follows:

"[Assistant State's Attorney]: The key in this case is to remember,

it must be a substantial impairment, and I think what Doctor Chapman was trying to tell you is that someone can have a mental disorder, and he says that the defendant is suffering from some depression; but that does not mean that the mental disorder automatically equals insanity. It must be such a mental disorder that he cannot stop himself in committing a crime, or that he knew that he was committing a crime.

MR. FINNEY [defense counsel]: I will object to that. That is not a correct statement of the law.

MR. JUSTICE [Assistant State's Attorney]: I think it's a—

THE COURT: There is an instruction on this point, and the jury will be told to follow the instructions what the test is.

MR. FINNEY: Well I'm objecting, my objection is, he's stating the standard which is not the standard.

THE COURT: I think it is close to the standard. We won't discuss it now. I think his statement is within reason."

The test for whether a person is legally insane, is contained in section 6—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 6—2(a)), which states:

"A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

Defendant asserts that the foregoing statement by the prosecutor told the jury that to be insane defendant must not know that his conduct was wrong. The correct standard is that defendant must lack "substantial capacity" to know that his conduct was wrong. Defendant asserts that the prosecutor's statement decreased the State's burden in proving defendant's sanity, as the standard for insanity is more stringent than that stated by the prosecutor.

■■ While we agree with defendant that this statement by the prosecutor was erroneous, the error was slight in light of the record, and the context of the argument, and we believe it harmless. At the beginning and again at the end of his closing argument the prosecutor correctly stated the standard for insanity, quoting almost verbatim from the statute. During the argument over the complained-of remark the judge noted that the jury would follow the instructions given them. The defense attorney, in his closing argument, specifically criticized the prosecutor's summary of the law on insanity. The jury was subsequently properly instructed on the definition of insanity, as well as being instructed that the arguments of the attorneys did not constitute evidence. Thus, the minor error made by the Assistant State's Attorney in interpreting the standard was greatly mitigated, and does not constitute reversible error.

Defendant's final contention is that the cumulative effect of the errors made at trial prejudiced his insanity defense, and denied him the right to a fair trial. The errors, as previously noted, were minor when viewed in the context of the entire trial. In this case, as in *People v. Ballard* (1978), 65 Ill. App. 3d 831, 842, 382 N.E.2d 800, 809:

> "In view of the amount of competent, relevant evidence of defendants' guilt [here insanity] introduced at trial, the guilty verdict returned by the jury could not be attributed to the cumulative effect of any trial errors."

Affirmed.

GREEN and WEBBER, JJ., concur.