2019 IL App (1st) 170985-U

No. 1-17-0985

Order filed November 22, 2019

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 15747 |
| | ) | |
| ARSEAN WILLIAMS, | ) | Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for aggravated battery to a peace officer is affirmed. Although the State misstated the law during its rebuttal closing argument, the misstatement was corrected and was harmless error.

¶ 2    Following a jury trial, defendant Arsean Williams was convicted of aggravated battery of

a peace officer and escape, and sentenced to concurrent terms of nine years' imprisonment. On

appeal, defendant only challenges the aggravated battery conviction, arguing that he was denied

a fair trial because the State misstated the law in its rebuttal closing argument and diminished its burden of proof in the eyes of the jury. We affirm.

¶ 3     Defendant was charged by information with three counts of aggravated battery to a peace officer causing bodily harm (720 ILCS 5/12-3.05(d)(4) (West Supp. 2015)), and one count of escape (720 ILCS 5/31-6(c-5) (West 2014)), arising from an incident in Chicago.

¶ 4     Parole Commander Alexsei Norton testified that on August 29, 2015, at approximately 9:30 a.m., he and his partner, Agent Donald Kelly, went to the 7200 block of South Champlain Street in Chicago to arrest defendant for violating parole. Norton explained that parolees are required to stay at a host site approved by the Illinois Department of Corrections (IDOC). Defendant, who was on electronic monitoring, was allowed to be away from his host site at certain times, but IDOC was alerted because defendant's ankle monitor failed to communicate with his host site's phone line since 11:25 p.m. the prior night.

¶ 5     Norton and Kelly arrived at the host site, and a teenage male advised that defendant was a few doors down the street. The teenager left, and brought defendant back to the agents. Defendant stated he had only been down the street for a few minutes, but Norton knew this was not true and handcuffed him. Norton advised defendant that he was subject to an arrest warrant for his failure to return to his host site. Norton and Kelly placed defendant in their vehicle and transported him to the parole office.

¶ 6     Another commander instructed Norton to take defendant to the Stateville Correctional Center (Stateville), so Norton and Kelly escorted defendant back to their vehicle. Kelly and defendant went to the rear passenger side door. Norton waited at the rear driver side seat to receive defendant and secure his seat belt, but defendant "bumped" into Kelly and fled. Kelly

lost his footing, slipped, got up, and gave chase. Norton also chased defendant until he turned down an alley. Then, Norton returned to the vehicle and continued looking for defendant.

¶ 7     Norton picked up Kelly, who had continued the chase on foot, and called backup agents. When Norton and Kelly spotted defendant, Kelly exited the vehicle and chased him. Defendant, still handcuffed, was apprehended by the backup agents on a building's third floor porch. Norton identified a photograph of the apartment, and noted that the address was 8011 South Evans and not 8015 South Evans as he wrote in his report. Norton stated that when defendant fled from Kelly, he saw "exactly" what had happened even though the vehicle's closed door was between himself, Kelly, and defendant.

¶ 8     On cross-examination, Norton clarified that he kneeled on the seat of the vehicle in the passenger area and saw the incident through the vehicle's rear passenger window. Kelly did not complain of any injuries after he regained his footing and did not limp while pursuing defendant.

¶ 9     Kelly testified to substantially the same events as Norton. After Kelly and Norton were assigned to transport defendant from the IDOC office to Stateville, Kelly led defendant to the vehicle, and Norton went to the driver's side rear door. Kelly approached the vehicle's rear passenger side door, holding a chain that connected defendant's handcuffs with his right hand. With his left hand, Kelly reached to open the back door. Defendant then "threw himself" into Kelly, "blindsid[ing]" him, and ran out of the parking lot. Defendant's left shoulder and the left side of his face struck Kelly's face and right shoulder blade, causing Kelly to lose his footing and fall on the vehicle's trunk.

¶ 10    Kelly chased defendant, but lost sight of him and called Norton, who picked him up in the vehicle. They drove for 5 or 10 minutes trying to locate defendant, and called backup agents.

Kelly saw defendant, exited the vehicle, and helped arrest him on the third floor porch. Afterwards, Kelly removed his vest because he "felt pain" and noticed a red welt down the right side of his shoulder blade.

¶ 11 On cross-examination, Kelly stated that there were non-working video cameras in the parole office parking lot. Kelly felt a "pinch" but did not fall, and did not seek medical attention or photograph his injury. The parties stipulated that Kelly testified at a preliminary hearing that defendant was arrested at 8015 South Evans.

¶ 12 The court admonished the jury that closing arguments were not evidence. During closing arguments, the State recited the elements of aggravated battery to a peace officer, including that defendant knowingly caused bodily harm to Kelly. Defense counsel argued the State failed to "prove injury" because Kelly "didn't even know that he was injured until he went home," did not seek medical attention, or take photographs. In rebuttal, the State argued, "You can't shove an officer in order to get away. There doesn't have to be bodily harm. You don't have to hospitalize an officer." Defense counsel objected, arguing that the State misstated the law. The court sustained the objection. The State continued:

> "I did misspeak. It's any bodily harm. Any bodily harm is sufficient to prove an aggravated battery when the person you're battering you know to be a peace officer.
>
> It's an attack on the whole system, the whole way that the community is protected if you attack a police officer while they're performing their official duties, and it's any bodily harm. It doesn't have to be a hospitalization of an officer because if you give—if he had caused—if he had caused Agent Kelly a headache, that would be bodily harm. Any bodily harm is sufficient."

¶ 13    Before deliberations, the court admonished the jury as to the elements of the offense, including "bodily harm to another person." The court also told the jury that closing arguments are not evidence, and to disregard questions "to which objections were sustained." The jury began deliberating at 4:30 p.m., and at approximately 5:15 p.m. sent a note to the court asking whether "both prosecution and defense agree that Donald Kelly was bumped." By agreement of the parties, the court responded that the jury heard the evidence and should continue deliberations. The jurors sent a second note reading: "To the prosecution's statement regarding the aggravated battery proposition one, the extent of bodily harm is irrelevant. Example, headache would constitute bodily harm, true?" Again, the parties agreed to the court's response that the jury had the law and should continue deliberating.

¶ 14    At 6:30 p.m., the court received two notes from the jurors. One stated that they had a verdict on escape, but were "deadlocked on aggravated battery." The second note stated that one juror had to leave to care for her children. The jury was again instructed to continue to deliberate. At 7:30 p.m., the jurors sent another note indicating that "two jurors *** stated unequivocally they will not sign a guilty form for aggravated battery." The court then called the jury into the courtroom and, over defense counsel's objection, admonished the jury pursuant to *People v. Prim*, 53 Ill. 2d 62 (1972). At 8:30 p.m., the jury found defendant guilty of aggravated battery and escape.

¶ 15    Defense counsel filed a motion for new trial, arguing that the State's misstatement of the law regarding bodily harm deprived defendant of a fair trial. The court denied the motion. After a hearing, the court sentenced defendant to concurrent terms of nine years' imprisonment.

¶ 16    On appeal, defendant argues that he was denied a fair trial because the State misstated the law during rebuttal by stating that Kelly did not have to sustain bodily harm for defendant to be convicted of aggravated battery of a peace officer. The State concedes that the prosecutor misspoke, but notes that defense counsel objected, the trial court sustained the objection, and the prosecutor then correctly stated the law. Therefore, the State posits that the jury was properly instructed as to the law, and no error occurred.

¶ 17    As defendant objected to the prosecutor's argument at trial and included his claim in his posttrial motion, he preserved this issue for review. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) (both a contemporaneous verbal objection and a written postsentencing motion are required to preserve an issue for review). Therefore, the State bears the burden of persuasion that the prosecutor's misstatement was harmless error. *People v. Donahue*, 2014 IL App (1st) 120163, ¶ 111.

¶ 18    Initially, the parties disagree regarding the standard of review. Defendant, citing *People v. Wheeler*, 226 Ill. 2d 92 (2007), argues that *de novo* review is proper as to whether statements by a prosecutor are so egregious that they warrant a new trial. *Wheeler*, 226 Ill. 2d at 121 (applying *de novo* review). In *People v. Blue*, 189 Ill. 2d 99 (2000), however, the supreme court also stated that abuse of discretion is the appropriate standard of review. *Blue*, 189 Ill. 2d at 128 ("regulation of the substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion" (internal quotation marks omitted)). This court has explained that no conflict exists between *Wheeler* and *Blue*, as "a reviewing court applies an abuse of discretion analysis to determinations about the propriety of a prosecutor's remarks

during argument," but "reviews *de novo* the legal issue of whether a prosecutor's misconduct, like improper remarks during argument, was so egregious that it warrants a new trial." *People v. Cook*, 2018 IL App (1st) 142134, ¶ 64; *People v. Davis*, 2018 IL App (1st) 152413, ¶ 68; but see *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 48 (finding "the abuse of discretion standard is the correct one"). In this case, defendant's claim of error fails under either standard.

¶ 19    "A prosecutor has wide latitude in making a closing argument." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context. *People v. Buss*, 187 Ill. 2d 144, 244 (1999). The factors to consider when determining whether a misstatement of the law entitles a defendant to a new trial include, but are not limited to, "whether the prosecutor correctly stated the law in other parts of the argument and whether the defendant objected to the misstatement of the law." *People v. Lozada*, 211 Ill. App. 3d 817, 824 (1991). Further considerations are "whether the judge properly instructed the jury on the law and reminded the jury that the arguments of the attorneys did not constitute evidence; and whether the misstatement of the law constituted a material factor in the defendant's conviction." *Id.* Where admonishments are given by the court, the jury is presumed to follow those instructions. *People v. Rodriguez*, 2012 IL App (1st) 072758-B, ¶ 65. "Reversal is warranted only if the prosecutor's remarks created substantial prejudice," which occurs where the remarks "constituted a material factor in a defendant's conviction." (Internal quotation marks omitted.) *People v. Johnson*, 385 Ill. App. 3d 585, 604 (2008).

¶ 20    Relevant here, a person commits battery if he or she knowingly, without legal justification and by any means, causes bodily harm to an individual. 720 ILCS 5/12-3(a) (West 2014). Bodily harm involves "some sort of physical pain or damage to the body, like lacerations,

bruises or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). "To establish that there has been bodily harm in a battery case, there is no requirement that the evidence demonstrate a visible injury such as bruising, scratching or bleeding." *People v. McEvoy*, 33 Ill. App. 3d 409, 411 (1975). As charged here, a person commits aggravated battery when, in committing a battery, he or she knows the individual battered to be a peace officer performing his or her official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West Supp. 2015).

¶ 21    At trial, Kelly testified that defendant blindsided him by throwing himself into him. Later, Kelly noticed a painful, pinching feeling and saw a red welt on his right shoulder blade. Defense counsel challenged the extent of Kelly's injury. His cross-examination of both Norton and Kelly focused on Kelly's delayed physical pain, the lack of medical attention, and lack of photographs of the injury. Defense counsel referenced the same points during his closing argument. During the State's initial closing argument, the prosecutor correctly stated the law regarding the elements needed to prove aggravated battery of a peace officer. However, the prosecutor misstated the law during rebuttal by stating "[t]here doesn't have to be bodily harm" to Kelly, and the trial court sustained defense counsel's objection. The prosecutor corrected himself, stating that any bodily harm was sufficient to prove aggravated battery when the person battered is a peace officer, and added that the bodily harm required did not have to cause the "hospitalization of an officer." Afterwards, the court instructed the jury regarding the elements of aggravated battery, including "bodily harm to another person," directed the jury to disregard testimony and evidence to which objections were sustained, and admonished that closing arguments were not evidence.

¶ 22    Viewing these circumstances together, we find the State's misstatement of the law was harmless. The trial court cured the State's misstatement, not only by sustaining the defendant's objection, but by informing the jury that closing arguments were not evidence and giving proper instructions on the elements required to sustain a conviction for aggravated battery to a peace officer. See *People v. Simms*, 192 Ill. 2d 348, 396-97 (2000) (finding that a trial court may cure errors in closing arguments by giving proper instruction on the law, informing the jury that closing arguments are not evidence, or sustaining the defendant's objections); see also *People v. Moreno*, 238 Ill. App. 3d 626, 636 (1992) (prosecutor's erroneous statement during closing argument held harmless where the trial court properly instructed the jury on the law). The State itself correctly stated the bodily harm required in its initial closing argument and at the end of its rebuttal. See *People v. Duckworth*, 98 Ill. App. 3d 1034, 1039 (1981) (holding State's misstatement of standard for insanity was harmless where State identified the correct standard at the beginning and end of its closing argument). Moreover, Norton and Kelly testified consistently about the harm Kelly suffered and the jury accepted their testimony as credible. As such, defendant's argument as to the prosecutor's misstatement of the law regarding "bodily harm" fails.

¶ 23    Notwithstanding, defendant argues the prosecutor improperly suggested the jury could find bodily harm if Kelly sustained a "headache." According to defendant, this comment focused the jury on facts not in evidence, minimized the State's burden of proof, and compounded the prosecutor's earlier assertion that a finding of bodily harm was unnecessary for a conviction.

¶ 24    Defendant concedes that he forfeited review of this issue by failing to timely object at trial and only including the matter in his motion for a new trial. See *People v. Enoch*, 122 Ill. 2d

176, 186-87 (1988). However, he claims this court may still reach the issue under the plain error exception to the forfeiture rule. Additionally, defendant argues that trial counsel was ineffective for failing to preserve the error in closing argument by objecting at trial.

¶ 25    The plain error doctrine is a "narrow and limited exception" to the general forfeiture rule. *Hillier*, 237 Ill. 2d at 545. Pursuant to the doctrine, a reviewing court may address forfeited claims when (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Harvey*, 2018 IL 122325, ¶ 15. A defendant must first show that a clear or obvious error occurred to obtain relief under this rule. *Hillier*, 237 Ill. 2d at 545.

¶ 26    In this case, we find no error. As explained, the prosecutor's misstatement was nonprejudicial and the jury was correctly instructed on the law, including that bodily harm is an element of aggravated battery and that its existence is a question of fact. With the jury properly instructed, the prosecutor was allowed to provide examples for applying the law to the facts. See *People v. Jackson*, 333 Ill. App. 3d 962, 969-70 (2002) (the State "may give examples illustrating the application of the law to the facts, and where the prosecutor correctly states the law, there can be no prejudice to the opposing party" (internal quotation marks omitted)). Thus, viewed in context, the State's argument that a headache could constitute bodily harm did not distract the jury from the facts or minimized the State's burden of proof. Rather, as Kelly testified that he "felt pain" and suffered a visible "red welt," facts in evidence supported a

finding that he suffered bodily harm. As no error occurred, defendant's claim of ineffective assistance also fails. *People v. Moon*, 2019 IL App (1st) 161573, ¶ 47 (declining to address ineffective assistance of counsel where no error occurred).

¶ 27  Defendant posits that the jury's notes establish that the State's example confused the jury, but the record does not support this conclusion. The jury's first note asked for clarification about whether the parties agreed that Kelly was bumped, and does not demonstrate confusion or inappropriate reliance on the State's bodily harm example as defendant claims. The jury's second note, which asked if "the extent of bodily harm is irrelevant" and whether a headache would constitute bodily harm, was not incompatible with the law as the jury had been instructed. Moreover, defendant did not object to the trial court's response, which instructed the jury to continue deliberating. Having acquiesced to the manner in which the court proceeded, defendant cannot now assert a challenge to that conduct. *People v. Jaimes*, 2019 IL App (1st) 142736, ¶¶ 38-40. Therefore, neither note demonstrated what defendant purports.

¶ 28  Defendant's contention regarding the meaning of the remaining notes, which indicated that the jury was deadlocked on the aggravated battery verdict, is also unsupported by the record. There was no indication that the jurors were confused by any of the evidence presented at trial. As there was no error, plain error analysis is unwarranted. Moreover, though defendant raises this issue about the notes the jury sent to the trial court in his brief, he does not support it by citation to relevant authority. Defendant therefore fails to satisfy the requirements of Supreme Court Rule 341(h)(7) (eff. May 25, 2018), and his contention is forfeited. *People v. Hunt*, 234 Ill. 2d 49, 67 (2009).

¶ 29    In sum, we find that the State's misstatement of the law during its rebuttal closing argument was harmless. Therefore, the judgment of the trial court is affirmed.

¶ 30    Affirmed.